Thank you, your honor. Good morning and may it please the court. My name is Hector Vega. I represent the petitioner Ms. Delfina Soto. I'd like to reserve four minutes for rebuttal. Ms. Soto seeks review of the overturning of the IJ's grant of relief by the BIA. Ms. Soto is an indigenous Mexican woman who was tortured for hours by Mexican authorities to obtain a confession for a crime she did not commit. The IJ denied asylum and withholding but granted mandatory... You say she did not commit. She alleges she did not commit. She alleges she did not commit, your honor, yes, and she was found credible during the 11 hours of her testimony. And the BIA wrongly overturned the IJ's grant. Over the course of five hearings, close to 30 exhibits, and like I said, 11 hours of her own testimony, she was waterboarded and she was asphyxiated by Mexican authorities, threatening her to not report her torture or she would be killed. Since her release, for lack of evidence, a mob in her town has vowed to kill her upon her return. It is uncontested in this case that she suffered past torture. And it is uncontested that upon return, she will again be in police custody. The only factors for relief that the BIA overturned... You know what really bothers me about your case? Each time you say it, you don't identify the place where it took place. I apologize, your honor. So there's a problem in one town, but it's clear that if she goes back, she's going to go to another town. And if you could keep that in mind, you would help me a lot with this particular case. Putting it all together does not help. Okay, go ahead. My apologies. Let me explain that this torture was carried out by state police at the state of Michoacan, Mexico. In what city? The actual torture occurred in Morelia, Michoacan, which is a few hours outside of Uruapan, which is the town where the townspeople that we referred to are from and where her house was burglarized and burned that we are talking about. But I'd like to also point out now that this fact that the possibility of torture is not bounded to the city of Morelia. In fact, unconstitutional actions by the police have taken place in Uruapan. That's where they picked her up. That's where the police in Morelia picked her up without a warrant on their false premises. So to believe the respondent's argument that the torture is bound to one city and if she's sent to a different city than that, in that city she won't be tortured, it's not the case because here the state police has jurisdiction over the entire state of Morelia, which includes the two towns that we are talking about. And your honor, since her release for lack of evidence, a mob has vowed to kill her. And these are the only factors, these are the only two factors that the BIE overturned, whether or not she will be tortured again by the authorities or by the police with the of that police. And either finding in favor of Ms. Soto will result in the mandatory grant of relief. In this case, the BIE wrongly overturned that grant of mandatory relief for two main reasons. And this petition is an opportunity to correct that wrong against a victim of torture. First, the BIE's review of the case was executed under the wrong standard. While the BIE is predictive findings under clear error, the analysis of the board shows that they engaged in improper de novo review. And that's a legal question that this court reviews de novo. My second argument is that even if this court finds that the board applied the correct standard, when you analyze it under the substantial, under substantial evidence, unless this court agrees with the BIE that the IJ's findings are illogical, implausible, or an unreasonable inference from the record, then you must reverse the decision of the board and remand with directive to grant relief. So let me address first the BIE's use of the wrong standard. The BIE is only permitted to use de novo review on questions of law and legal interpretation. All other issues, especially predictive findings, are reviewed for clear error. This court is not obligated to give any deference to the BIE simply because it is saying that it's reviewing for clear error. This court has routinely reversed the board for improperly engaging in de novo review. And by engaging in fact finding and not giving appropriate deference to the IJ's predictive findings, the BIE leads us to conclude that they use the wrong standard. First, it engaged in by the regulations they're not permitted to do. The board found that the refiling of the criminal charges in Mexico was constitutionally sound under that country's constitution. It also found that it was independent from the 2012 case, which is incorrect. And the filing of another case by the prosecution to say that it's somehow corrective action of her past torture, or somehow that it that's without basis, your honor. Most of the evidence of this new case is recycled from the first one. And the new evidence that was either and the new evidence that was submitted with it was either deemed not probative or used only as demonstratives. The new case even uses the same complaint from the 2012 criminal case. There is nothing independent about this new the new evidence right. Second, the BIA reviewed the case anew and avoided giving deference to the IJ's findings by omitting the facts that demonstrate the weakness of the new charges and the need for another coerced confession. The BIA omitted the fact that the initial charges that were dismissed were not only dismissed because of unconstitutional actions by the police, but because that evidence which against they're using in the 2014 case lack probative value. This includes the mother's statements and other statements by people who were given when they were drunk at the times of the events were going on. The BIA omitted the fact that the police engaged in acquiescence by helping a mob of angry people to access one of the codependents, that the police did not stop that assault against that man, and instead that the police followed the mob's instructions instead of police protocol. Those omissions show that the BIA reviewed the case anew and went out of its way to reverse the IJ's factual findings. Third, the BIA made improper factual findings that the relative safety of Ms. Soto's daughter somehow results in the prediction that this petitioner may safely relocate in Mexico. The BIA chose to not discuss the fact that the daughter was only 15 years old at the time that the events were going on. She was never a codependent in this case, never the subject of investigations, and never a reporting witness of torture. The BIA is in fact... Wasn't there a considerable amount of threat against the entire family by the people? And she is included in that group. Why isn't it at least relevant that she's been able to go to another part of Mexico and receive no problem? Why isn't it at least relevant? I would concede that it's relevant, your honor, but I will argue that it's not a strong factor against a finding that the IJ's finding of inability to relocate internally is illogical or implausible. The BIA in fact is confusing this case for an asylum family unit case where perhaps the relative safety of other people who are benefiting from relief, their safety may be more relevant than in this case. However, this is not that case. This is not a family unit case. This is not about a family being in danger. This is about a town believing that Ms. Soto is a witch and that she is guilty because that's what they read in newspapers. That's what they hear. Wait a minute. You're leaving out that the family was actually threatened. They went to the home. She was threatened as a part of the family. The only reason she was threatened is because of her mother. I don't see that this... It may not be that important, but I don't see how you can just discount it. If her daughter can go to someplace having the whole town is after, if her daughter can go to another place and be safe, it's at least relevant that she can. I don't know how you can just discount it completely. Could you help me? Yes, your honor. Thank you for your question. Like I said before, I'm not completely discounting it. I'm not saying that this is completely irrelevant. I'm not saying that this evidence should somehow be outside of the record. All I'm trying to point out is that the town's opinions are that Ms. Soto is the person who is guilty. This town believes that in 2012, she got away with it despite hearing in newspapers and by word of mouth that she's in fact guilty. The relative safety of her extended family doesn't mean as much as the risk of sending Ms. Soto back to Mexico because Ms. Soto is the one that they try to burn at the stake because Ms. Soto is the one that they consider to be a witch who has somehow enchanted the police to believe certain things. I do want to move on to my next point, your honor, if I may. My second argument is that even if this court believes that the BIA carried out review under the correct standard, a review of this court under substantial evidence leads us to the same conclusion that she must be granted mandatory relief under CAP. The board can't simply override the IJ's because it thinks that it would have seen the evidence differently. The board, it is unconscionable to accept that the board's opinion in that the IJ's findings are somehow illogical, implausible, or unreasonable under these facts. I have to point out that her past torture is the most important factor in this case and it is uncontested. This court's precedent states that even that if there was past torture, then future torture is likely to reoccur unless circumstances have significantly changed. And as the country conditions show, torture to seek confessions remains. But beyond the point of just Ms. Soto being tortured by the police to obtain a new confession, she reported them to the Human Rights Commission and they did not learn of that report until after she was out of their custody. So now, if she is sent back to Mexico, they will get their opportunity to enforce those threats and kill her because of her past actions. They warned her about going to the Human Rights Commission, right? They did. They did. During the initial torture, they told her that if she reported the torture, they would go after her, torture her, and even kill her. And she did report it. However, they did not learn of that report until after she was out of custody, which is one of the many facts that the respondent gets wrong and that the VA got wrong about this case. They also can say that... Would you entertain a question? Yes, Your Honor. If she goes back, according to the red flag set up, she'll go not back to the city where she lived, but to a different city, correct? Yes, Your Honor. The red notice states that she will go to Morelia, but that... And that's several hours away from the city where the murder took place. Two hours, which the police drove from Morelia to Uruapan to pick her up without a warrant and then drove her to Morelia to conduct the torture. So like I said it before, the police has state jurisdiction. Your answer is much more than my question was, but okay. I would like to reserve the remaining of my time, if I may. Please do. Thank you. Very well. So let's hear from Mr. Beilert again, please. Good morning. May it please the court. My name is Jeff Beilert. I'm here on behalf of the Attorney General. In this case, the board properly applied the law. It did not conduct a de novo review of the immigration judge's decision. It looked at the totality of the evidence, which is exactly what it was supposed to do here. And the board properly found that Ms. Soto had not established that it would be more likely than not that she would be tortured if she's returned to Mexico. With respect, I read lots of these kinds of cases. And I have rarely read a worse torture description than what's involved in this case. And as I looked at what the BIA, how the BIA described it, the way it dealt with what the IJ found, it does seem to me that it applied an improper standard of review. For example, it relied on assertions that had no basis in the record. For example, it relied on the fact that Soto Soto was not tortured again after filing her human rights commission, but she didn't file a complaint until after she was released. It's really quite disturbing to me what the BIA did here. Can you tell me anything? What am I missing? Why is this so much of a disconnect, what the BIA did versus the IJ? There's 1,900 pages of this record. It's an exhaustive record. I think that when you look at what the board did here is it looked at the totality of the evidence. And in the board's decision, this is in our brief, page 27, the board lays out why the immigration judge clearly erred when it concluded that it would be more likely than not that she would be tortured. And what the board did is it walked through the evidence that the immigration judge had considered, and it found that that was clear error. So the board talks about, for example, the report of her mistreatment by the Mexican police. She did file a complaint with the human rights commission. The human rights commission did take action, but she fled to the United States and illegally entered the country. And so that complaint was never fully addressed. The point is that nobody knew about her complaint. The police had said they were going to torture her if she complained. They didn't know about that complaint when she was there. As I saw it, the problem with everything the BIA was saying was there was a logical flaw in almost everything they said, either a factual error. And to your point, the IJ had the same 1,900 pages, and he made a predictive finding. It has to be clear error. And every time you look at one of these arguments that the BIA raises, they seem to fall apart. Why don't you tell me that you think doesn't fall apart? Well, for this court to reverse the board's decision, you would have to conclude that the evidence compels a finding that it would be more likely than not that she would be tortured. Why do we have to do that? Don't we have to decide whether the BIA did their job under the proper standard and gave proper and properly looked at the IJ? We don't have to find that we would come out the same way or that the BIA would be compelled to come out the other way if they were applying the proper standard. I don't see why that comes into it. The question is, did they do their job the right way? Or did they mess up and not apply the standard the way it's supposed to be? Your Honor, I guess from my perspective, I don't think that the board messed up to the extent that it applied the wrong legal standard. The board correctly identified the legal standard and it correctly looked at the immigration judge's findings. And it found that the immigration judge failed to consider evidence that pointed the opposite direction. And it was clear error because it left that out. The board looked at the evidence that, for example, the members of her family continue to live in Mexico. They have not. But there's no purpose in putting pressure on her family if she's not there. Who knows what's going to happen to her family if she returns? That's the problem with that. Everything the BIA raised, there was another answer. Like, why must that be so? And if they're going to overturn BIJ, it has to be clear error on factual matters. You're correct, Your Honor. And I think that when you look at, you have to conclude that it's more likely than not that she's going to be tortured if returned to Mexico. And when you look at the totality of this record, all the evidence that was considered, the board properly reviewed the immigration judge's finding and it did find that the immigration judge failed to consider some of this evidence. And in the board's decision, it lays out exactly what the immigration judge failed to consider. It goes through, yes, she was mistreated by the anti-kidnapping unit. Yes, she was detained. She filed the complaint. Mexico has taken steps to make sure that such misconduct does not occur. A completely different office of the state's prosecutor investigated this. Heard evidence from 16 different witnesses. Okay. Which police department is going to have custody of her when she returns? Isn't it the state police of Morelia? The state, I believe so, Your Honor. The state police department, right? It's not the anti-kidnapping unit that was the original. And that has been, I think it's the state police department that then went to Interpol and released the red notice for the warrant of her arrest for the killing of a five-year-old who had been kidnapped for ransom and held for one month, who was buried in an avocado field. So yes, the immigration judge himself found that there are reasons to believe that she may have committed this crime. Interpol reviewed the warrant. It's a horrific crime, and she's been alleged to have committed it. And yes, she will face justice when she returns to Mexico. But what we really have to focus on here is whether it's likely or they're not that she's going to be tortured. I think what we have to focus on is whether the immigration judge committed clear error in finding that she was more likely than not to face torture. And the BIA can say, we are applying the clear error standard. But then if they don't, we have to look at it that way. That's what we have to look at, don't we? Whether the BIA was justified in the way they applied the standard here. Yeah, under GERA versus BAR, doesn't the BIA have to determine whether or not the ID's account is plausible? That's correct, your honor. And the board identified the correct legal standard, and the board exhaustively considered the evidence. Its decision, it explained why it found that the immigration judge clearly erred. It walks through exactly what the things that the immigration judge did not consider, and that it's finding that it would be more likely than not it was incorrect. And so the board did exactly what it was supposed to do in this case, and the board talks about all the reasons why it found that the immigration judge clearly erred on this record. Did the BIA conclude that the findings of the IJ were not plausible? I don't know if the word not plausible is used, your honor, but the immigration... They just looked at the evidence differently. They cited different things, came with a different answer, but I don't I don't remember seeing anything in the record that suggested that they found that the IJ's decision was implausible, or is finding it back. Well, so I'm, and this is, we talked about this, we mentioned for this court to reverse, you'd have to conclude the evidence compels a contrary conclusion. So that's, that's the standard that the Supreme Court has articulated. It would be so compelling. That's right, that is right. If, if they have applied the correct standard of review, the BIA did the correct standard of review, you're correct. But if the BIA applied the wrong standard of review and conducted a de novo review, then then they are in error, and we would act based on that, would we not? Um, I obviously take, uh, I don't think that the board did apply a de novo review. I understand that. But even putting that aside... You're the, you're the board's lawyer. I understand you don't agree. But I'm just saying, if, if we were to find that the board applied the wrong standard of review, that's what we look at, is it not? It's not like, most of what you bring in, bring to us, we have to deal with whether there's substantial evidence that compels a different result. But if the BIA applied the wrong standard of review, it's a different analysis, is it not? Yeah, I agree with that, your honor, that's correct. But here, you, you don't have that. The, the board did exactly what it was supposed to do. It looked at the totality of the evidence, and it pointed out the things that the immigration judge failed to consider, and that was clear error on the part of the immigration judge. There is more than substantial evidence in this case that establishes that she did not carry her burden, that torture would be more likely than not, if she was removed to Mexico. Counsel, that's all, that's just incredible to me that you say that. I mean, when you look at what her allegations are, the way she was treated, the fact that she went to the Human Rights Commission, like I chatted, they felt pretty much the same way. I mean, this is a compelling argument, that she would in fact be tortured again. She was specifically told by her torturer, who was discredited by the IJ, that if she reported anything to the Human Rights Commission, she would suffer the same torture. What am I missing? Your honor, the board talks about this, the fact that Mexico has taken steps to improve the situation. It is true that the anti-kidnapping unit improperly treated her, and that she was subjected to beatings. I mean, isn't that all you need to show that she suffered? Absolutely not, your honor. To prove that she, past torture is one factor, and so even if you were to conclude that she suffered past torture, that is one factor that is considered. That's the legal standard. Counsel, we talked about this in the opening. There are many factors that are considered. Judge Wallace, you are correct. The fact that she is not being sent back to the exact town, that it's two hours away. The fact that Mexico has taken steps to improve the situation. The fact that she's reported this. The fact that her daughter and her family are not being subjected. The fact that she might be in a different town might affect the townspeople. It doesn't affect the people that would torture her. That's correct, your honor. And you have to include the government. Right. So yes, look, it's a five-year-old kid. It's understandable that some of the people are upset, that the neighbors, the family. I can only imagine the sorts of emotions that must feel for a five-year-old kid who was kidnapped for a month and murdered. I mean, I get it. There are families and people that are upset in that town. That does not mean that the police are going to torture her. It does not mean that it's likelier than not that if she's returned to Mexico. Let's say, do you agree that the anti-kidnapping people did torture her extensively? Do you agree with that? The immigration judge, and you look at this record, yes, the immigration judge found that there had been past torture. Okay, so there's past torture. There's then a presumption that she'll be tortured again. That's incorrect. That's incorrect, your honor. That's not what the law says. That's one factor that is considered. If there's past torture and not a presumption of future torture? There are factors that it has to be considered. And the immigration judge failed to consider these things. The board lays it out, all of the evidence that needs to be considered in making a finding that it would be more likely than not that she's going to be tortured. And there are several other factors that the immigration judge failed to consider, and that's what the board pointed out in its decision. It was clear error for the immigration judge to fail to consider these other factors. And this evidence, when you look at the totality of the evidence, that's the standard that the board was applying here. The totality of evidence does not support the immigration judge's finding that it would be more likely than not that she's tortured upon her being sent back to Mexico based on this Interpol warrant that was issued. And Mexico has taken steps to make sure that this doesn't occur. It's true that the anti-kidnapping unit mistreated her. I don't deny that. It was a terrible situation for sure. But there's not evidence on this record that compels the conclusion that she's going to face torture. It would be more likely than not if she's returned to Mexico. So when you apply the proper standard of review, you look at this case, the board properly applied the law, and it reversed the immigration judge's finding. We ask that you deny this petition from review. Any other questions by my colleague for the government? No, thank you. All right, Mr. Vega, you've got a few minutes for a little time for a response. Thank you, Your Honor. I'd like to first address the respondents' argument on what the true meaning of past torture is. We agree that there's no applied presumption that if there's past torture, then that means that there's a presumption of future torture. However, it is the most important factor in any evaluation of CAD, and in fact, the IJ states that this is the principal factor which he's considering to lead to his determination of likelihood of future torture. And President from this court states that if there was past torture, then it is likely, perhaps not presumption likelihood, but it is likely that torture will happen again unless there's significant changes to this individual's circumstance, and those changes have not occurred here. In fact, the country conditions state that coercion, sorry, torture to coerce confessions continues to be one of the most serious human rights violations in Mexico. I also like to point out that general actions by the government saying that they are fighting torture in this country or that they have laws against torture, that doesn't negate the individual actions of local officers, and that has also been upheld multiple times in this court. So address the real... Could you entertain a question? Yes, your honor. Yes, I'm on, I think I want to have some direction of what your position is. You continue to, your argument is if it goes back, the same thing is going to happen, but that's not what the board said. She lived in Morelia. That's where the problem took place, where she was accused. That's where the anti-whatever-they-are corruption group got her, took her to jail, and tortured her, but that was Morelia. But in the red notice, they aren't sending her back to Morelia. They're sending her back to Urupan, and in Urupan is where the investigation took place. There's no evidence in the record that this anti-whatever-they-are group of police officers are going to be involved with her. And so it strikes me that from the record that we have here and what was said, that there's not a proof that she will be tortured because they've changed the circumstance. Now, why is that wrong? That's what I think the board was saying. Why is that wrong? Two points, your honor, and I know that this record is extensive, but one, the anti-kidnapping police is a state agency, and they do have access to Urupan, which is two hours away from Morelia. The anti-kidnapping police visited her twice prior to her arrest, did questioning in her home, and then... That was her home in Morelia. In Urupan, your honor, in Urupan. Now, what I heard in the record was that the very same police who tortured her came to Urupan, and I understood that she was sent back for incarceration in Morelia to await her trial. I didn't see anything in there that she was even in her home. I can point it out to you if you give me a second, but there is a part in my brief where one of the witnesses in this case states that the anti-kidnapping police went to her house. They came out of the house, talked to him, and says she's not the one at Ms. Soto's house, and they told the witness that she was not the suspect of the crime, and then his response was, well, most likely she gave them some sort of potion or some sort of witchcraft, and that's why they don't believe them that Ms. Soto is the one that's guilty. So, that's one of several parts in the record where Ms. Soto was encountered by anti-kidnapping police outside of Morelia. She was in jail in Urupan. If she says back she was going to go to jail in Morelia to await the trial on her, which they will try and find out if she is guilty. She will not be a matter? I don't think we have enough record to know whether or not the state police will have jurisdiction or discretion to say we'll keep her in Morelia or we're keeping her in Urupan. What we do know is that they have statewide jurisdiction, but besides the point of the police torturing her directly, there's still the other two likelihoods of torture, that at any point where she comes out of custody and tries to get to be in Michoacan, the people are able to reach her, whether she goes back to Urupan, whether she goes to Morelia. These are people that can easily find her because they'll know the starting point. The starting point is the state court. The townspeople. The townspeople. You're not talking about the police doing this. You're talking about the townspeople who are mad at her because she's charged with killing a kid and that they would, they are the ones that would torture her. Yes. Okay. Yeah. Overall, there's three bases for torture. Either the police torture her because they need a new declaration. They torture her because she threatened them before and they told her not to or the townspeople kill her because they believe what has been said that she is guilty. And with that, I rest my case. So if they send her back pursuant to this red flag, she would go into custody. The assumption is she will be out of custody someday and they would then have the opportunity, the townspeople to kill her. And based upon what the townspeople might do, she is, she should not be sent back. Correct. Alone that or in the aggregate with the other factors, it is more likely than not that she will be tortured when she returns. If she returns to Mexico. Let me just ask you one other question. I know you've talked about different branches of the police, but all the police, the anti-kidnapping people and the other police, they're all police, right? They're all agents of the government. So for purposes of our analysis, we can put aside what the villagers might want to do. You've got the police that have tortured her. They are in both towns where she's located. If she's returned based on an international warrant, they will certainly know where she is. And based on our previous cases, if there's a presumption of past torture, then there will be a presumption rather than a presumption of past torture. If there's proof of past torture, there's a presumption of future torture unless the government rebuts that. They can do it by relocation or you can do it by otherwise showing that she would not be tortured. But that's what our analysis is about what the villagers do, right? It's not necessarily what the villagers will do, but it is one of the factors for CAT. Either the police directly tortures her or people with the acquiescence of the police torture her. And we have both scenarios here, Your Honor. Okay. Well, thank you. Any other questions by my colleagues? No, thank you. Thank you both for your arguments. Very troubling case. The case just argued Soto Soto v. Barr is submitted and the court stands in recess for the day.
judges: Wallace, M. Smith, Restani